**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES DISTRICT JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

October 21, 2020

LETTER TO COUNSEL

RE:  *Tracy G. v. Saul*;
Civil No. SAG-20-54

Dear Counsel:

On January 8, 2020, Plaintiff Tracy G. petitioned this Court to review the Social Security Administration's ("SSA's") final decision to deny her claim for Disability Insurance Benefits. ECF No. 1. I have considered the parties' cross-motions for summary judgment, supporting memoranda, and Plaintiff's reply. ECF Nos. 11, 13, 14. I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will deny both motions, reverse the judgment of the SSA, and remand the case to the SSA for further analysis pursuant to sentence four of 42 U.S.C. § 405(g). This letter explains my rationale.

Plaintiff filed her claim for benefits on September 14, 2015, alleging a disability onset date of November 12, 2014. Tr. 194-95. Her claim was denied initially and on reconsideration. Tr. 74, 89. A hearing was held on June 8, 2018, before an Administrative Law Judge ("ALJ"). Tr. 40-67. Following the hearing, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time frame. Tr. 13-39. The Appeals Council denied Plaintiff's request for review, Tr. 1-6, so the ALJ's decision constitutes the final, reviewable decision of the SSA.

The ALJ found Plaintiff suffered from the severe impairments of "anxiety disorder; affective disorder; and degenerative disc disease of the lumbar spine status post laminectomy." Tr. 19. Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) except she can sit for six hours in an eight-hour workday, can stand and/or walk for four hours in an eight-hour workday, and occasionally climb stairs, ladders, balance, stoop, kneel, crouch, and crawl. In addition, she should avoid concentrated exposure to vibration and is limited to performing unskilled work.

*Tracy G. v. Saul*
Civil No. SAG-20-54
October 21, 2020
Page 2

Tr. 21.  After considering the testimony of a vocational expert ("VE"), the ALJ determined that plaintiff could not perform her past relevant work as a school secretary or cashier clerk, but that she could perform other jobs existing in significant numbers in the national economy.  Tr. 28-30.  Therefore, the ALJ concluded that Plaintiff was not disabled.  Tr. 31.

Plaintiff raises two arguments on appeal: (1) that the ALJ improperly weighed the medical opinion of her treating physician, Dr. Chary, and "failed to build a logical bridge from the evidence to his conclusion;" and (2) that the ALJ improperly evaluated the consistency of Ms. Green's symptoms with the overall record.  ECF No. 11 at 17-3 (internal citation omitted) (internal quotation marks omitted).  I agree, to the extent described below.  In remanding for further explanation, I express no opinion as to whether the ALJ's ultimate conclusion that Plaintiff is not entitled to benefits is correct.

"The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities."  Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *3.  The ALJ is required to include a "narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."  *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting SSR 96-8p).  "In other words, the ALJ must *both* identify evidence that supports his conclusion *and* 'build an accurate and logical bridge from [that] evidence to his conclusion.'"  *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) (emphasis in original) (quoting *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016)).  A proper narrative is necessary for judicial review.  *See Geblaoui v. Berryhill*, Civil No. CBD-17-1229, 2018 WL 3049223, at *3 (D. Md. June 20, 2018) ("Without a proper narrative discussion from the ALJ, it is impossible for the Court to determine if the ALJ's decision on Plaintiff's RFC limitations is supported by substantial evidence.").  Of course, "it is the duty of the [ALJ] reviewing the case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts of evidence."  *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

Here, the ALJ failed to build a logical bridge between his conclusion that Plaintiff retained the RFC to perform the full range of unskilled work and the evidence in the record demonstrating Plaintiff's mental limitations. Plaintiff frames the argument by first challenging the ALJ's discrediting Dr. Chary's mental health opinions. Her observation that the mental health evidence at least partially corroborated Dr. Chary's opinions is significant.  Specifically, Plaintiff argues the ALJ "did not consider the consistency of [Dr. Chary's] opinions with other mental health evidence of record."  ECF No. 14 at 4.  At least to the extent Dr. Chary's opinions coincide with the mental health evidence in the record, I agree.  Here, the ALJ found that Plaintiff experienced moderate mental health limitations, based on the evidence he deemed credible.  Tr. 27.  Yet the ALJ's RFC does not reflect that finding. Further, the ALJ included no "narrative discussion describing how the evidence" that Plaintiff experiences moderate limitations "supports [the] conclusion" that Plaintiff could do, in relevant part, unskilled work with no other nonexertional limitations.  *See* SSR 96-8p; Tr. 21.

*Tracy G. v. Saul*
Civil No. SAG-20-54
October 21, 2020
Page 3

The Commissioner echoes the ALJ's comments suggesting that Dr. Chary, as a general internist, lacked mental health expertise and adds, "More importantly, Dr. Chary had referred Plaintiff to two psychiatrists who treated her with medication and therapy – yet they did not proffer such opinions." ECF No. 13 at 13 (internal citations omitted). The Commissioner misses the significance of the psychiatrists' medical evidence. Dr. Chary prescribed mental health medication and referred Plaintiff to two psychiatrists. ECF No. 13 at 13; Tr. 25-26. The record additionally contains reports from two consultative psychologists. Tr. 75-88, 90-110. While these four mental health professionals may not have agreed with Dr. Chary as to the full extent of Plaintiff's limitations, they did not conclude Plaintiff was without limitations—and neither did the ALJ. Phrased differently, the concerted conclusion that Plaintiff experienced at least a moderate limitation in concentration, persistence, or pace obviates the need to rely on Dr. Chary's opinion at all.

The ALJ recounted the evidence in the record of Plaintiff's mental limitations and agreed that Plaintiff experienced moderate limitations in concentration, persistence, or pace. Tr. 21, 26. Further, the ALJ assigned "some weight" to the opinions of the state psychological consultants at the initial and reconsideration levels, both of whom, as experts in mental health, identified Plaintiff as moderately limited in concentration, persistence, or pace. Tr. 28. Those opinions, which the ALJ found were "generally consistent with the evidence, show[ed] that claimant often exhibits depressed and anxious moods, fair to poor insight and judgment, and fair to poor attention." Tr. 28. Yet, the nonexertional RFC the ALJ found makes no mention of Plaintiff's limited ability to stay on task. *See* Tr. 21. Instead, the ALJ summarily concluded, "[T]he claimant's anxiety and depression limit her to performing unskilled work." *Id.*

"[A] necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling, including a discussion of which evidence the ALJ found credible and why…." *Monroe*, 826 F.3d at 189 (quoting *Radford v.* Colvin, 734 F.3d 288, 295 (4th Cir. 2013) (internal quotation marks omitted)). Absent from the ALJ's decision is how or why he concluded Plaintiff could perform unskilled work despite her moderate limitation in concentration, persistence, or pace. *See* Tr. 28. The ALJ's RFC analysis lacks the necessary "narrative discussion" bridging the gap between the ALJ's findings and his ultimate conclusion.[1] *See* SSR 96-8p; Tr. 21. To the contrary, the ALJ suggests a causal relationship between two findings inconsistent with caselaw in the Fourth Circuit by concluding "that the claimant's mental impairments cause a moderate limitation in her ability to concentrate, persist, or maintain pace, *which* restricts her to unskilled work." Tr. 26 (emphasis added); *see Mascio*, 780 F.3d at 638.

Plaintiff additionally argues that the ALJ erred in assessing the consistency of her symptoms and the overall record. At least to the extent of Plaintiff's mental health symptoms, I agree. Plaintiff argues, "[T]he ALJ noted other multiple abnormal examination findings that were

---

[1] An explanation is necessary because the RFC, on its face, does not account for Plaintiff's moderate limitation in concentration, persistence, or pace, as required by Fourth Circuit law. *See Mascio*, 78 F.3d at 638 (holding an ALJ does not account for a Plaintiff's moderate limitation in concentration, persistence, or pace simply by limiting her nonexertional RFC to unskilled work). The analysis therefore lacks the "accurate and logical bridge" required by *Monroe* because the ALJ's findings mismatch his ultimate RFC determination. 826 F.3d at 186.

*Tracy G. v. Saul*
Civil No. SAG-20-54
October 21, 2020
Page 4

supportive of Ms. Green's reported symptoms, including her psychological symptoms, but he failed to explain how such objective medical findings were inconsistent with Ms. Green's reported symptoms of. . .psychological distress." ECF No. 14 at 6-7. The Commissioner, who focuses his opposition on Plaintiff's physical limitations, hardly addresses Plaintiff's second argument as to her mental limitations. In addition to making a general statement that "the treatment records simply do not support [Plaintiff's] allegations concerning the severity of her symptoms," he states only that "[m]entally, the record showed that [Plaintiff] had a history of anxiety and depression." ECF No. 13 at 16.

The ALJ does not clearly describe what evidence in the treatment records undermines the mental limitations Plaintiff claims. First, the ALJ's step three discussion of concentration, persistence, or pace states:

> The claimant reports difficulty concentrating, focusing, staying on task, and completing tasks. In addition she alleges she has a short attention span, racing thoughts, and trouble following instructions. However, the claimant states that she is able to she is able to (sic) drive short distances and manage her finances.

Tr. 20. Driving short distances and managing her own finances do not illustrate that Plaintiff can stay on task throughout an eight-hour workday. Second, though the ALJ states Plaintiff's statements "concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record," the ALJ provides no specific support for his conclusion. Tr. 22, 28.

In contrast, the evidence on which the ALJ relied suggests limitations in Plaintiff's ability to sustain unskilled work. After noting an array of findings in Plaintiff's mental health records, the ALJ found the medical evidence generally suggested Plaintiff "often exhibits poor attention and anxious or depressed moods with a congruent affect…." Tr. 26. The ALJ's finding that Plaintiff did not experience "deficits in memory, thought process, insight, or judgment" does not address her ability to persist through an eight-hour day of unskilled work. *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.00(A)(2)(b), 12.00(E)(3). Likewise, Plaintiff's lack of hospitalizations, suicidal or homicidal ideations, or intensive treatment does not provide logical support for the ALJ's proposition that Plaintiff could be expected to regularly and routinely work a full workday. *See id.* at § 12.00(E)(2); Tr. 27.

The ALJ repeatedly cites to Plaintiff's questionable history of medication compliance. The ALJ's suggestion that her mental limitations "improve" with compliance does not logically support his conclusion that Plaintiff is capable of unskilled work. The ALJ wrote that Plaintiff's "depression and anxiety symptoms improve when she is medication compliant," Tr. 26, and noted three appointments in which Plaintiff reported noncompliance. *See, e.g.*, Tr. 25 ("…the claimant reported she was taking her medications as prescribed"); ("[a]t her next visit in December 2014, she reported she was taking her medication as prescribed…"; ("[i]n September 2015, she stated that she was compliant with medication…"); ("[i]n September 2015, the claimant stated that she was taking her medication…"); ("…at her next appointments…she told Dr. Deonarine that she

*Tracy G. v. Saul*
Civil No. SAG-20-54
October 21, 2020
Page 5

was medication complaint"); ("[i]n March 2016, she…reported that she had not been compliant with medication"); ("[a]t her next visits in April and May 2016, treatment notes show that she was medication compliant…"); *see also, e.g.*, Tr. 26 ("[n]otably, treatment notes from July 2018 show that she reported running out of medication for a week…"); ("[a]t a February 2018 appointment, she again reported that she had stopped taking her medication…"). Though the ALJ provided a detailed account of Plaintiff's compliance and noncompliance, he did not explain its relevance. He also did not explain the degree of improvement Plaintiff may or may not experience when medicated. Further, he did not analyze whether the improvement would be sufficient to overcome Plaintiff's moderate limitation in her ability to maintain concentration, persistence, or pace.

Moreover, under the facts of this case, the ALJ improperly relied on Plaintiff's alleged noncompliance. It is true that a claimant's compliance with medication can be an acceptable basis for finding a claimant not disabled. 20 C.F.R. § 416.630(b) ("[i]f you do not follow the prescribed treatment without good reason, we will not find you disabled…"). However, a claimant must be afforded an opportunity to provide "good reason," and that process may properly lend insight into the claimant's credibility. SSR 96-7p, 1996 WL 374186 (July 2, 1996); *see also, e.g.*, *Dunn v. Colvin*, 607 Fed. App'x 264, 275-76 (4th Cir. 2014) (finding an ALJ properly considered a claimant's medication noncompliance in her credibility determination because the claimant reported fear of weight gain and inability to pay, without pursuit of purchasing assistance, caused her noncompliance). Thus, the mere existence of some evidence of noncompliance does not on its own permit a finding that the Plaintiff is less than credible, intentionally noncompliant, or suffering symptoms less serious than described:

> [T]he adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment. The adjudicator may need to recontact the individual or question the individual at an administrative proceeding in order to determine whether there are good reasons the individual does not seek medical treatment or does not pursue in a consistent manner.

*Id.* Here, the ALJ made no inquiry into the causes of Plaintiff's three instances of noncompliance. In fact, the ALJ inquired very little into Plaintiff's mental functioning as a general matter, asking only whether Plaintiff experienced mental health issues, if she was seeing a psychiatrist, whether and why Plaintiff could not pay attention or concentrate, and if she often goes out. Tr. 56-57; *see* Tr. 40-67. The ALJ's utilization of the fact of noncompliance to undermine Plaintiff's credibility, without specifically inquiring into her reasons for noncompliance, is impermissible.

As suggested above, claimants may be noncompliant for "good reason," such as mental illness, and still be found disabled. 20 C.F.R. § 416.630(b). The cyclical relationship between medication compliance and functioning may be particularly problematic for a claimant such as Plaintiff, who is moderately limited in concentration, persistence, or pace. SSA considers the functional area of concentration, persistence, or pace to refer to:

5

*Tracy G. v. Saul*
Civil No. SAG-20-54
October 21, 2020
Page 6

> …the abilities to focus attention on work activities and stay on task at a sustained rate. Examples include: *initiating and performing a task that you understand and know how to do*; working at an appropriate and consistent pace; *completing tasks in a timely manner*; ignoring or avoiding distractions while working; changing activities or work settings without being disruptive; working close to or with others without interrupting or distracting them; *sustaining an ordinary routine and regular attendance at work*; and working a full day without needing more than the allotted number or length of rest periods in a day.

20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.00(E)(3) (emphasis added).[2]  The ALJ's findings as to Plaintiff's moderate inability to concentrate, persist, or maintain pace undermine his implication that Plaintiff is capable of unqualified unskilled work so long as she takes her medications. At a bare minimum, the two findings require the ALJ to build some logical connection between the notion that Plaintiff experiences difficulty persisting but can manage her mental health by regularly taking her prescribed medications. Thus, while the ALJ apparently found Plaintiff's medication noncompliance relevant, how it might be relevant in the context of her limited ability to concentrate, persist, or maintain pace is left unexplained.

Ultimately, the ALJ's evaluation of Plaintiff's mental impairments lacks substantial evidence.  It also does not provide the required logical bridge between the evidence of record and his ultimate conclusion.  Accordingly, remand is appropriate.

For the reasons set forth herein, Plaintiff's Motion for Summary Judgment, ECF No. 11, is DENIED and Defendant's Motion for Summary Judgment, ECF No. 13, is DENIED. Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is REVERSED IN PART due to inadequate analysis.  The case is REMANDED for further proceedings in accordance with this opinion.

Despite the informal nature of this letter, it should be flagged as an opinion.  An implementing order follows.

Sincerely yours,

/s/
Stephanie A. Gallagher
United States District Judge

---

[2] The paragraph B criteria "represent the areas of mental functioning a person uses in a work setting." 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.00(A)(2)(b).  Because regular medication compliance mirrors consistent task completion, a comparison is appropriate.